RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BRANDYWINE EXPLOSIVES & SUPPLY; KENTUCKY
EMPLOYERS MUTUAL INSURANCE,

              *Petitioners,*

    *v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS; RICHARD DEAN KENNARD,

              *Respondents.*

No. 14-3672

———————————

On Petition for Review of a Decision and Order
of the Benefits Review Board.
No. 13-0442 BLA.

Argued: March 6, 2015

Decided and Filed: June 15, 2015

Before: GRIFFIN and STRANCH, Circuit Judges; STEEH, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Mark E. Solomons, GREENBERG TRAURIG, LLP. Washington, D.C., for Petitioners. Rebecca J. Fiebig, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Evan B. Smith, APPALACHIAN CITIZENS' LAW CENTER, Whitesburg, Kentucky, for Respondent Kennard. **ON BRIEF:** Mark E. Solomons, Laura Metcoff Klaus, GREENBERG TRAURIG, LLP. Washington, D.C., for Petitioners. Sean G. Bajkowski, Rita A. Roppolo, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Evan B. Smith, APPALACHIAN CITIZENS' LAW CENTER, Whitesburg, Kentucky, for Respondent Kennard.

———————————

[*]The Honorable George Caram Steeh, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1

———————————

**OPINION**

———————————

JANE B. STRANCH, Circuit Judge.  Brandywine Explosives & Supply, along with its workers' compensation insurer, seeks review of the findings by an Administrative Law Judge (ALJ) that its former employee Richard Kennard is entitled to benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901, et seq.  As described below, the findings were supported by substantial evidence.  We accordingly DENY the petition for review.

## I.     FACTS

In August 2009, Kennard filed for black lung benefits.  He underwent a number of medical tests and examinations.  After the claims examiner initially recommended that his claim be denied, he sought a hearing before the Department of Labor Office of Administrative Law Judges.  The ALJ concluded that Kennard was entitled to a rebuttable presumption that he had pneumoconiosis and that the disease caused his total disability because he had worked in conditions that were substantially similar to those in an underground mine.  The ALJ further held that Brandywine successfully rebutted the presumption that Kennard had clinical pneumoconiosis.  The employer failed, however, to rebut the presumption of legal pneumoconiosis or the presumption that Kennard's disability was caused by his employment in a coal mine.  Brandywine appealed to the Benefits Review Board, arguing that the 15-year presumption should not apply to Kennard and, if the presumption did apply, the company had successfully rebutted it.

Between 1977 and 2009, Kennard worked for more than 21 years as a blaster on strip mines, sometimes directly for a coal company and sometimes for contractors.  At the administrative hearing and in a deposition, Kennard testified about the environmental conditions of his blasting work:

Q: So, was there any rock dust or coal dust that you were exposed to?

A: Yeah, plenty of it. You couldn't get away from it.  Most time, you'd be right on the shot.  You didn't have an air conditioner.  You just had to work right there close to it.  All the dust was flying and you was breathing it.

. . . .

There's a lot of dust flying and it wasn't self-contained.  I mean, [the drill cover] couldn't contain all of it.  You got some coming out.

. . . .

Q: And whenever you would blast the holes in which were drilled, what would happen then?

A: A whole lot of dust.  Dust would be flying because you're putting off a charge in the ground and you got a whole lot of dust comes in the air.

Q: Was that mainly rock dust or coal dust or ---

A: Rock dust, coal dust, everything you could get.

. . . .

Whatever was in the ground.  If you're drilling through little coal seams, sometimes you'd drill through little seams five or six inches thick and then when you shoot that, it's all like a big cloud of smoke.

Tr. at 17:8–13, 17–19; 18:1–7, 12–15.

Q: And doing the blasting aspect of that job would you be exposed to coal, rock, sand or other types of dust?

A: Yes. Exposed to you know rock dust, coal dust and everything you know.

Q: Obviously though when the shot is set off you are well away from that area?

A: Yeah, but you have dust to contend with there because it takes so long to get back you know and get away from it.  Do you know what I'm saying?

Q: Do they not wait before they go back in to check after a shot until it's settled?

A: There's still a lot of just in the air just floating in the air.  It would be like two hours before you completely settle it on the ground.

Q: And would you be the one who would typically the first one to go back?

A: Yes, the blaster always does that and calls the all clear signals.

Kennard Dep., DX 26 at 16:19–17:15.  Kennard performed his work immediately before the main coal production began at a given site.

Kennard also has a significant history of smoking—at least 60 pack-years.  The smoking gave him cancer in his right lung, and the lung was removed.  He also experiences shortness of breath (dyspnea), coughing, and sleep apnea.  His treating physician diagnosed him with Chronic Obstructive Pulmonary Disorder (COPD).  His breathing is extremely limited at approximately

25% of the expected level for a man his age, and he has significant trouble moving around, especially without external oxygen.

## II.     STATUTORY AND REGULATORY BACKGROUND

### A.     General Framework

The Black Lung Benefits Act (BLBA) provides benefits to coal miners who have become totally disabled due to pneumoconiosis resulting from their exposure to coal-mine dust. *See* 20 C.F.R. § 718.204(a).  To establish entitlement to benefits, a miner who files a claim must prove (1) that he has pneumoconiosis, (2) that the pneumoconiosis arose out of coal mine employment, (3) that he is totally disabled, and (4) that the disability was due to pneumoconiosis. 20 C.F.R. § 725.202(d)(2).  The regulations provide for proof of these elements by lay evidence, medical evidence, and the application of statutorily created presumptions.   20 C.F.R. §§ 718.202–205.

Pneumoconiosis is the technical term for lung disease caused by exposure to dust, commonly called Black Lung Disease.  Under the statute, pneumoconiosis is defined broadly as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment."  30 U.S.C. § 902(b).  The implementing regulations further clarify that there are two forms of pneumoconiosis for the purposes of the BLBA:  clinical and legal pneumoconiosis.  Clinical pneumoconiosis refers to a specific set of enumerated diseases, while legal pneumoconiosis "is a broader and less definite term that refers to any chronic lung disease that was caused *in this instance* by exposure to coal[-mine] dust." *Central Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 486 (6th Cir. 2014) (emphasis in original); *see also* 20 C.F.R. § 718.201(a).

The implementing regulations also establish the degree of causation required for a miner's respiratory disability to be considered "due to pneumoconiosis:"

> A miner shall be considered totally disabled due to pneumoconiosis if pneumoconiosis . . . is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment.   Pneumoconiosis is a "substantially contributing cause" of the miner's disability if it:

> (i)     Has a material adverse effect on the miner's respiratory or pulmonary condition; or
>
> (ii)     Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

20 C.F.R. § 718.204(c)(1).

This case concerns a rebuttable presumption for certain miners who worked in coal mines for at least 15 years and have a totally disabling respiratory impairment and are not otherwise eligible for a presumption of entitlement. These miners receive "a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4). To qualify for the presumption, the 15 years must have been spent either in underground coal mines or a surface mine such that the miner's conditions of employment "were substantially similar to conditions in an underground mine." *Id.* The miner bears the burden of establishing his entitlement to the presumption, but once he is found eligible, "the burden of production and persuasion lies on the employer . . . to rebut the presumption of disability due to pneumoconiosis." *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 479 (6th Cir. 2011).

The presumption was first added to the BLBA in 1972. *See* Black Lung Benefits Act of 1972, Pub. L. 92-303 § 4(c), 86 Stat. 150, 154 (1972). In 1981, Congress eliminated the presumption. Black Lung Benefits Amendments of 1981, Pub. L. 97-119 § 202(b)(1), 95 Stat. 1635, 1644 (1981). Congress reinstated the presumption in 2010, making it retroactive to claims filed after January 1, 2005 that were pending on or after March 23, 2010. *See* Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-148 § 1556, 124 Stat. 119, 260 (2010).

**B.     The Revised Regulation**

While Kennard's case was pending before the Benefits Review Board, the Department of Labor promulgated a revised regulation on the 15-year presumption. *See* Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act, 78 Fed. Reg. 59,102 (2013). The former regulation restated the statutory language that addressed which surface miners are eligible for the presumption, but the new regulation states that "[t]he conditions in a mine other than an underground mine will be considered 'substantially similar' to those in an

underground mine if the claimant demonstrates that the miner was regularly exposed to coal-mine dust while working there."  20 C.F.R. § 718.305(b)(2).

With regard to rebuttal, the former regulation stated:  "The presumption may be rebutted only by establishing that the miner does not, or did not have pneumoconiosis, or that his or her respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine."  20 C.F.R. § 718.305(a) (eff. prior to Oct. 25, 2013).  The new regulation states:

> In a claim filed by a miner, the party opposing entitlement may rebut the presumption by—
>
> (i) Establishing both that the miner does not, or did not, have:
>
> (A) Legal pneumoconiosis as defined in § 718.201(a)(2); and
>
> (B) Clinical pneumoconiosis as defined in § 718.201(a)(1), arising out of coal mine employment (see § 718.203); or
>
> (ii) Establishing that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis as defined in § 718.201.

20 C.F.R. § 718.305(d)(1).

We have already determined that the new regulation applies to all cases that were pending when it was promulgated—whether before an ALJ, the Benefits Review Board, or our court.  *See Central Ohio Coal Co.*, 762 F.3d at 489–90.  The new regulation is an interpretive regulation, and "a new interpretive regulation that is substantially consistent with prior regulations or prior agency practices, and has been accepted by all Courts of Appeals to consider the issue, can be applied to cases pending at the time the regulation is promulgated."  *Id.* at 489 (internal quotation marks omitted).  The new regulation is consistent with prior agency practice. *Id.* at 489–90; *see also Antelope Coal Co./Rio Tinto Energy Am. v. Goodin*, 743 F.3d 1331, 1342 (10th Cir. 2014).  In fact, the Department of Labor chose this regulation to formally adopt the longstanding approach of the Seventh Circuit—expressed in *Dir., Office of Workers' Comp. Programs v. Midland Coal Co.*, 855 F.2d 509 (7th Cir. 1988).  There, the court held that an ALJ should not require a surface miner to present evidence of conditions in an underground mine before the ALJ can find substantial similarity to underground-mine conditions.  Instead, "[t]he claimant is required only to produce sufficient evidence of the surface mining conditions under which he worked.  It is then the function of the ALJ, based on his expertise and, we would

expect, certain appropriate objective factors . . . to compare the surface mining conditions established by the evidence to conditions known to prevail in underground mines." *Id.* at 512. The Seventh Circuit further recognized that the most significant conditions for this purpose involved exposure to dust. *See Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 479–80 (7th Cir. 2001). The new regulation therefore applies to this and other cases that were pending when it was promulgated.

## III.     ANALYSIS

### A.     Unexhausted Issue

"Generally, this court will not review issues not properly raised before the [Benefits Review] Board." *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 602 (6th Cir. 2014). "In providing for review of BRB determinations in the courts of appeals, Congress in effect required that a [petitioner] exhaust all [its] administrative remedies." *Blevins v. Dir., Office of Workers' Comp. Programs*, 683 F.2d 139, 143 (6th Cir. 1982) (internal quotation marks omitted). This allows "a party aggrieved by the decision of an administrative law judge [to] find corrective action at the BRB and thereby remove the need for judicial review." *Id.* It also recognizes the particular familiarity and expertise of the agency with Black Lung Benefits matters. *See McKart v. United States*, 395 U.S. 185, 194–95 (1969) (discussing the general advantages of administrative exhaustion).

Though Brandywine now argues that the revised regulation on the 15-year presumption is invalid, it failed to present any arguments about the validity of the new regulation to the Benefits Review Board. The company argues that we should nonetheless consider its arguments "because any challenge in those proceedings would have been futile." Pet. Br. at 13 n.6. We disagree. First, we note that the Benefits Review Board has statutory authority to review Department of Labor regulations for consistency with the Black Lung Benefits Act. *Gibas v. Saginaw Min. Co.*, 748 F.2d 1112, 1117–19 (6th Cir. 1984). Second, Brandywine had notice of the new regulation and its application to this case. The Director of the Office of Workers' Compensation Programs noted and relied on the new regulation in its response brief before the Benefits Review Board, but Brandywine did not address the validity of the regulation in its reply brief or otherwise attempt to raise the issue before the board. Finally, unlike the argument that we found to be

futile in *Kyle v. Dir., Office of Workers' Comp. Programs*, 819 F.2d 139 (6th Cir. 1987), rejection of the new rule would not have required the Board to reverse course from a recently adopted position.

We proceed to address the issues that Brandywine did present to the Board: whether substantial evidence supports the ALJ's findings that Kennard was entitled to the 15-year presumption under the new rule and whether Brandywine failed to rebut the presumption.

**B.    Standard of Review**

This court has jurisdiction over petitions for review of final decisions of the Benefits Review Board under 33 U.S.C. § 921(c).  The Board's legal conclusions are reviewed *de novo*. *Morrison*, 644 F.3d at 477.  On factual issues, the court, like the Board, determines "whether the ALJ—not the Board—had substantial evidence upon which to base his or her decision." *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997); *see also* 33 U.S.C. § 921(b)(3). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "In referring to a singular 'reasonable mind,' the Supreme Court has directed us to uphold decisions that rest within the realm of rationality." *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 756 (4th Cir. 1999).  "Therefore, we may affirm an ALJ's decision even though we would have taken a different view of the evidence were we the trier of facts." *Big Branch Resources, Inc. v. Ogle*, 737 F.3d 1063, 1069 (6th Cir. 2013) (internal quotation marks omitted).

In summary, "[a] decision by the Board must be affirmed on appeal if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determination," that is, substantial evidence review. *Jonida Trucking, Inc.*, 124 F.3d at 742.

**C.    Kennard's Eligibility for the Presumption**

Brandywine first challenges Kennard's eligibility for the 15-year presumption.  Because Kennard worked exclusively on non-underground strip mines, he is eligible for the presumption only if he can prove that his working conditions at the strip mine were "substantially similar to conditions in an underground mine."  30 U.S.C. § 921(c)(4).  At the time of his hearing, the

regulations did not provide further guidance to the ALJ about how to apply the standard. Following Benefits Review Board precedent, the ALJ considered Kennard's uncontested lay testimony on the dust conditions of his blasting work and compared it to the ALJ's understanding of dust conditions in underground coal mines. *See* D&O at 14 n.36 (citing *Spese v. Peabody Coal Co.*, BRB No. 90-1856, 1995 WL 80209 at *4 (DOL Ben. Rev. Bd.)). As noted above, at pages 6–7, the Board adopted this approach following the Seventh Circuit *Midland Coal* decision, 855 F.2d at 512, and since Kennard's hearing, the Department of Labor promulgated the revised regulation on this issue, 20 C.F.R. § 718.305(b)(2).

The ALJ's decision was supported by substantial evidence. The ALJ particularly noted Kennard's testimony that "all the dust was flying around and you was breathing it" and his descriptions of "big cloud[s] of smoke" from coal dust, comparing them to the dust conditions experienced by underground miners. D&O at 14–15. The testimony easily supports a finding that Kennard was regularly exposed to coal-mine dust.

Brandywine makes two arguments to the contrary. First, it contends that the ALJ failed to consider that, while at Brandywine, Kennard did not spend every day blasting at coal mines, and the limited number of days that he was exposed to coal dust at Brandywine render his work there dissimilar to the work of an underground miner. This misconstrues the ALJ's finding. The ALJ found that when Kennard was working as a blaster on coal mines for Brandywine, his work was substantially similar to the work of an underground miner. He did not consider, in counting the fifteen years of substantially-similar conditions, the days that Kennard was not working as a blaster. In other words, he treated Kennard as he would have treated a miner who spent the same number of days in an underground mine, with the remaining days spent doing non-mining work. Because the ALJ found Kennard to have more than 21 years of work under substantially similar conditions, moreover, he would qualify for the presumption even if his work at Brandywine were not counted.

Second, Brandywine argues that Kennard was primarily exposed to rock dust and dirt, rather than coal dust, and that he therefore should not be entitled to the presumption. In the company's words: "Since rock dusting is a recognized method for suppressing coal dust and is used throughout the industry for this purpose, Kennard's suggestion that rock dust presents a risk

of disease not only makes no sense, but it is supported by nothing." Reply Br. at 14–15 n.5. Brandywine further cites our dicta in *Central Ohio Coal Co.*, that the distinction between coal dust and dust from dirt "may be significant" in applying the presumption. 762 F.3d at 490.

Brandywine's proposed distinction between coal dust and rock dust has no merit. Although it is true that the mandatory safety standards for underground mines require the use of rock dusting to suppress coal dust, the rock dust is used to suppress the *combustible* nature of coal dust and to prevent explosions. *See* 30 C.F.R. § 75.402. In the context of respiratory safety, the standards explicitly regulate the concentrations of quartz dust—a type of rock dust—that may be present. *See* 30 C.F.R. § 70.101; *see also In re Howard*, 570 F.3d 752, 754–56 (6th Cir. 2009) (discussing this standard in further detail). Furthermore, the definition of clinical pneumoconiosis includes silicosis, a disease caused by rock dust (silica) and not coal dust. 20 C.F.R. § 718.201(a)(1). Rock dust is part of the respiratory hazard faced by underground coal miners and was an appropriate consideration in determining whether Kennard's working conditions were similar to those in an underground mine. As in the *Central Ohio* case, the record also supports a finding about coal dust alone. As a blaster, Kennard cleared away the rock and dust that lay over coal deposits; he explicitly testified that he would periodically come across thin seams of coal, leading to "clouds of smoke."

The record contains substantial evidence that Kennard was regularly exposed to both coal and rock dust. He has therefore established that his working conditions were substantially similar to those in an underground mine and is entitled to the presumption.

**D.     Rebuttal**

Having found Kennard eligible for the 15-year presumption, the ALJ addressed rebuttal: "As the Claimant has established the threshold requirements for invocation of the rebuttable presumption, the burden shifts to the Employer to rebut the presumption by establishing either (a) that the Claimant does not have pneumoconiosis; or (b) that his respiratory or pulmonary impairment does not arise out of, or in connection with, coal mine employment." The parties now dispute the relationship of Kennard's COPD to his exposure to coal-mine dust and the extent to which his coal-mine employment contributed to his disability in light of his lung

removal for unrelated reasons. The ALJ considered three doctors' opinions on these issues: Dr. Mahmood Alam, Dr. Bruce C. Broudy, and Dr. Abdul K. Dahhan.

Dr. Alam equivocally diagnosed Kennard with legal pneumoconiosis by virtue of his COPD. He acknowledged that the "number one cause" of the COPD was smoking but maintained, with varying degrees of certainty, that coal-mine dust exposure likely contributed to the disease. At various times, he described the dust exposure as responsible for "at least 10 percent" of Kennard's disability, or "at least 15% of total pulmonary impairment," or that it "could have done some aggravation" of the emphysema. Dr. Alam also noted that Kennard's diminished lung capacity was significantly less than could be explained by the removal of his lung, such that he may have been totally disabled even if his lung had not been removed. Because of the equivocal nature of Dr. Alam's opinion, the ALJ gave less weight to his opinion on the legal-pneumoconiosis issue.

Dr. Broudy opined that Kennard did not have pneumoconiosis and his disability was therefore not related to his coal-mine employment. He noted Kennard's diagnosis of COPD and attributed the lung disease entirely to cigarette smoking. In deposition, he opined that "the respiratory impairment is easily explained by the fact that this gentleman has had a right pneumonectomy [lung removal] and damage to his lung from previous cigarette smoking" and "[t]here was no evidence of pneumoconiosis in the remaining lung." Dr. Broudy, however, provided no other explanation for his opinion that coal-mine dust inhalation was not a factor causing the COPD, and for this reason, the ALJ discredited his testimony.

Dr. Dahhan noted that Kennard's respiratory impairment resulted from the removal of his right lung "which created anatomical loss of more than half of his respiratory capacity" and was "contributed to by his previous smoking habit and resulting bronchitis [(COPD)]." He opined that the degree of respiratory impairment was too severe to "be accounted for by the impact of coal dust on the respiratory system." He also noted that Kennard's treating physician had prescribed bronchodilators for the COPD. Because lung disease caused by inhalation of coal-mine dust is not responsive to bronchodilators, he considered the prescription to be evidence that dust inhalation had no causal role in the COPD. In deposition, he testified that 65% of the loss of lung function could be attributed to the removal of the right lung.

The ALJ discounted Dr. Dahhan's testimony on several grounds. First, he characterized the opinions as internally inconsistent, due to the varying degree to which Dr. Dahhan acknowledged the COPD and varied characterization of the impairment as obstructive or restrictive. Second, because several respiratory tests conducted by Dr. Dahhan and others showed that Kennard's disease was not responsive to bronchodilators, that aspect of the opinion was not well-reasoned. Finally, Dr. Dahhan insufficiently accounted for the possibility that Kennard's respiratory problems had multiple causes, even though the most significant cause was smoking and the resulting lung removal.

The ALJ found that Brandywine rebutted the presumption of clinical pneumoconiosis, but that the mixed evidence did not rebut the presumption of legal pneumoconiosis—the presumption that Kennard's COPD was caused, in part, by his coal-mine employment. Addressing the causation issue, the ALJ noted that "an employer establishes rebuttal when it shows that pneumoconiosis played no part in causing a miner's disability or death." D&O at 25 (citing *Island Creek Coal Co. v. Holdman*, 202 F.3d 873, 882 (6th Cir. 2000), and other cases). The ALJ discredited Dr. Dahhan's and Dr. Broudy's opinion on causation because they had not found legal pneumoconiosis. Noting in particular Dr. Alam's opinion that Kennard's COPD was so severe in his remaining lung that he would likely be totally disabled even had he never had cancer, the ALJ found that Brandywine had not rebutted the presumption that Kennard's respiratory impairment—and disability—were caused by his coal mine employment.

Brandywine argues that the ALJ used the improper rebuttal standard; that it rebutted the presumption that Kennard has legal pneumoconiosis; and that it rebutted the presumption that Kennard's disability was caused by his coal-mine employment. None of these arguments is availing.

### 1.    Rebuttal Standard

Brandywine first argues that the ALJ improperly limited its avenues of rebuttal. The 15-year presumption presumes three elements of a claim: (1) that the miner has pneumoconiosis, (2) that the pneumoconiosis arose out of his coal-mine employment, and (3) that the miner's total disability is due to the pneumoconiosis. Brandywine contends that the ALJ limited his analysis

to the first two elements, without considering whether the pneumoconiosis was so mild that it did not cause Kennard's total disability.

We have already addressed and rejected this argument. *See Big Branch Resources*, 737 F.3d at 1069–71. There we began by noting the three elements of entitlement to benefits that the 15-year presumption affects, *id.* at 1069, then explained that a finding of legal pneumoconiosis establishes the first two elements, leaving only the third, *id.* at 1070. We found that an ALJ "d[oes] not err by collapsing the two-step causal chain—that coal mine employment caused pneumoconiosis which in turn caused total disability—into a single question: did the miner's disability arise out of his coal mine employment?" *Id.* The argument "that a miner's pneumoconiosis is mild and that the totally disabling respiratory impairment is the product of another disease . . . is not a unique third rebuttal method, but merely a specific way to attack the second link in the causal chain—that pneumoconiosis caused total disability." *Id.* In this case, as in *Big Branch Resources*, "[n]othing in the record suggests that the [employer] was prevented from making this argument." *Id.*

The company further argues that the ALJ erred by requiring it to prove that Kennard's legal pneumoconiosis "played no part" in his disabling respiratory impairment, rather than determining whether pneumoconiosis was a "substantially contributing cause." We likewise rejected this argument in *Big Branch Resources*:

> Simply put, the "play no part" or "rule-out" standard and the "contributing cause" standard are two sides of the same coin. Where the burden is on the employer to disprove a presumption, the employer must "rule-out" coal mine employment as a cause of the disability. Where the employee must affirmatively prove causation, he must do so by showing that his occupational coal dust exposure was a contributing cause of his disability. Because the burden here is on the [employer], the [employer] must show that the coal mine employment played no part in causing the total disability.

*Id.* at 1071.

The ALJ's articulation of the rebuttal standard was appropriate.

## 2.     Rebuttal of Legal Pneumoconiosis

Substantial evidence supports the ALJ's finding that Brandywine failed to rebut the presumption of legal pneumoconiosis.  All three of the doctors who examined Kennard noted that he has COPD.  There was disagreement about whether the COPD was solely a result of his cigarette smoking or was also caused or worsened by coal-mine dust.  The ALJ found none of the medical opinions to be persuasive on the issue.  "Dr. Alam's opinion is equivocal and vague; Dr. Broudy gives no reason for excluding coal dust as a cause of the Claimant's emphysema; and Dr. Dahhan is inconsistent and not well-reasoned."

Focusing extensively on the uncontested issue of Kennard's lung cancer and minimizing the factual errors and inconsistencies in Dr. Dahhan's opinions, Brandywine urges us to reverse the ALJ's credibility determinations for Dr. Broudy and Dr. Dahhan.  There is sufficient evidence supporting the ALJ's credibility determinations.  Dr. Dahhan's opinions contained a number of leaps of logic, including ignoring the possibility that Kennard's COPD could have multiple causes—smoking and dust exposure.  Dr. Dahhan's opinion also relied on his belief that the COPD was responsive to bronchodilators, but there was evidence before the ALJ that the disease did not respond to bronchodilators.  As for Dr. Broudy, his opinion relied only on the lack of a finding of clinical pneumoconiosis, providing no explanation for why he did not believe dust exposure played a role in the COPD.

Brandywine also urges the court to weaken the presumption, so that Dr. Alam's equivocal opinion would be sufficient to rebut the presumption of legal pneumoconiosis.  As we noted in *Morrison*, however, rebuttal requires "that the evidence affirmatively proved the absence of pneumoconiosis."  644 F.3d at 480 n.5.  In the present case, there is evidence that Kennard suffers from COPD in addition to his lung cancer.  The only question is whether smoking alone caused the COPD or whether it was also caused or worsened by the coal-mine dust exposure.  Dr. Alam, the only credible medical opinion on the issue, largely opined that the COPD was partially caused by coal-mine dust exposure.  Brandywine points to no affirmative proof of the absence of pneumoconiosis, in Dr. Alam's opinion evidence or elsewhere.  The ALJ did not err in finding that Brandywine failed to rebut the presumption of legal pneumoconiosis.

### 3.    Rebuttal of Causation

Brandywine next argues that the ALJ erred in finding that the causation element was not rebutted.  The employer first argues that the ALJ failed to consider this issue, instead treating the causation issue as automatically resolved by the failure to rebut the presumption of legal pneumoconiosis.  In fact, the ALJ considered this issue carefully, reviewing the opinions of all three doctors.  Each doctor opined that Kennard's impairment was more severe than could be explained solely by the removal of his right lung.  The ALJ relied on these opinions, and particularly Dr. Alam's opinion that Kennard's respiratory capacity was so low that he may have been disabled even with both lungs.  At that juncture, the only remaining question was what caused the additional respiratory impairment—an issue resolved by the earlier finding of legal pneumoconiosis.  There was no need for the ALJ to analyze the opinions a second time.

Brandywine insists that, because Kennard would be totally disabled had he never set foot in a mine (due to his lung cancer and lung removal), it would be unfair to hold the company responsible for his disability.  The implementing regulations and our long-standing precedent have rejected this view of the causation requirement.  Since 2000, the regulations have made clear that, even when a claimant bears the burden of proof, he must show only that pneumoconiosis was a "substantially contributing cause" of the disability, a standard that is met if pneumoconiosis "[h]as a material adverse effect on the miner's respiratory or pulmonary condition; or [m]aterially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment."  20 C.F.R. § 718.204(c)(1).  In defining this standard, the Department relied in part on our court's reasoning in *Cross Mountain Coal, Inc. v. Ward*, 93 F.3d 211 (6th Cir. 1996).  *See* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79,920, 79,946–47 (2000).  In *Cross Mountain*, we expressly rejected Brandywine's argument:

> A review of the cases, the statute, its legislative history, and its interpretation by the benefits review board shows that the statute is intended to confer special benefits on miners who are disabled due to pneumoconiosis whether or not they are disabled from a different cause. Even when other causes are themselves independently disabling the concurrence of two sufficient disabling medical causes one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act.

93 F.3d at 217 (internal quotation marks and alterations omitted). Notably, Brandywine relies almost exclusively on cases decided before the "substantially contributing cause" standard was promulgated in 2000. (One of these cases, *Shelton v. Dir., Office of Workers' Comp. Programs*, 899 F.2d 690 (7th Cir. 1990), was explicitly rejected in *Cross Mountain*. *See* 93 F.3d at 217.)

The ALJ did not err in finding that Brandywine failed to rebut the 15-year presumption of eligibility.

## IV.     CONCLUSION

For the foregoing reasons, we DENY the petition for review.