NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0252n.06

Case No. 17-4216

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
May 23, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CONSOL OF KENTUCKY, INC.; CONSOL ENERGY, INC., | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW BOARD, UNITED |
| STEVE R. ESKUT; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) ) | STATES DEPARTMENT OF LABOR |
| Respondents. | ) ) | |

BEFORE: SILER, COOK, and WHITE, Circuit Judges.

COOK, Circuit Judge. Steve Eskut worked in coal mines for several decades until 1998 when his health no longer allowed it. An Administrative Law Judge granted his claim for federal black lung benefits, which the Benefits Review Board affirmed. Eskut's former employer, Consol of Kentucky, Inc., petitions for review. For the following reasons, we DENY the petition.

**I.**

### A. Legal Framework

The Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, entitles an individual to benefits if he is (1) a miner (2) who suffers from pneumoconiosis (3) arising out of his coal mine

employment and (4) causing (5) his total disability. 20 C.F.R. § 725.202(d); *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1069 (6th Cir. 2013). Better known as black lung disease, pneumoconiosis is a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). If the miner worked for at least fifteen years in a coal mine and "demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." *Id.* § 921(c)(4).[1] "[T]he rest of the elements outlined in 20 C.F.R. § 725.202(d) are presumed and the burden shifts to the employer to rebut them." *Ogle*, 737 F.3d at 1069.

"The employer may rebut the fifteen-year presumption by establishing that: (1) the miner has neither clinical nor legal pneumoconiosis, or (2) the miner's respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." *Duncan*, 2018 WL 2050669, at *1 (quotation marks and citations omitted); 20 C.F.R. § 718.305(d)(1). Clinical pneumoconiosis "consists of those diseases recognized by the medical community as pneumoconioses," 20 C.F.R. § 718.201(a)(1), whereas legal pneumoconiosis is "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," *id.* § 718.201(a)(2). "[A] disease 'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.* § 718.201(b).

---

[1] The statutory presumption and corresponding regulations have evolved over the years. *See Zurich Am. Ins. Grp. v. Duncan*, --- F.3d ---, 2018 WL 2050669, at *1 n.1 (6th Cir. May 3, 2018) (explaining their enactment, repeal, and reenactment).

## B. Procedural Background

Eskut filed his claim in 2012. He requested a hearing after the Office of Workers' Compensation Programs proposed denying benefits, prompting the claim's referral to an ALJ. The ALJ found that Eskut had worked as a miner for at least twenty-four years, and that Eskut's pulmonary function tests indicated his total disability. With Eskut therefore entitled to the rebuttable presumption that his total disability is due to pneumoconiosis, the ALJ considered whether Consol rebutted the presumption. But Consol fell short, according to the ALJ, because it failed to establish that Eskut did not have legal pneumoconiosis or that Eskut's total disability did not arise out of his coal mining work. So the ALJ awarded Eskut benefits.

On appeal by Consol, the Board affirmed the award. This petition for review followed.

## II.

## A. Standard of Review

We review de novo the Board's legal conclusions. *Ogle*, 737 F.3d at 1068. We will leave in place "the Board's decision unless the Board has committed legal error or exceeded its scope of review." *Id.* On factual issues, we look to see "whether the ALJ applied the applicable law correctly to reach a conclusion supported by substantial evidence." *Id.* "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "In deciding whether the substantial evidence standard is satisfied, we consider whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence." *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 488–89 (6th Cir. 2014) (quoting *Greene v. King James Coal Mining, Inc.*,

575 F.3d 628, 634 (6th Cir. 2009)). "We do not reweigh the evidence or substitute our judgment for that of the ALJ." *Ogle*, 737 F.3d at 1069 (quoting *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001)).

## B. Discussion

Consol's argument on appeal is threefold. First, Consol claims that the ALJ held it to the wrong standard to rebut the presumption of legal pneumoconiosis. Second, the company urges that the ALJ "provided invalid reasons to discredit" the opinions of the doctors (Dr. Allan Goldstein and Dr. Kirk Hippensteel) who examined Eskut at Consol's request. Third, Consol maintains the ALJ "failed to correctly consider" the diagnosis of Dr. Phillip O'Reilly, who evaluated Eskut on behalf of the Department of Labor.

### 1. *Rebuttal Standard*

The ALJ found that neither of Consol's doctors "adequately explained why [Eskut's] legal pneumoconiosis did not contribute, even minimally, to his respiratory disability. In other words, their opinions did not 'rule out' legal pneumoconiosis as a contributing factor in [Eskut's] respiratory impairment." The ALJ concluded that Consol "failed to rebut the presumption at § 718.305, because it did not establish, by a preponderance of the evidence, that 'no part' of [Eskut's] impairment was due to pneumoconiosis."

Consol argues that this amounts to an "incorrect, heightened" standard to rebut legal pneumoconiosis—that the "no-part" standard applies to rebutting disability causation but not to rebutting the presence of legal pneumoconiosis. According to Consol, the ALJ instead should have "determine[d] if the medical evidence demonstrated [that] a chronic pulmonary disease or respiratory or pulmonary impairment was significantly related to or substantially aggravated by dust exposure in coal mine employment."

The company misses the mark. In fact, the ALJ recited the standard in almost the exact terms proposed by Consol. She explained:

> Thus, in order to rebut the presumption that the Claimant has pneumoconiosis, the Employer must establish the absence of any respiratory or pulmonary impairment arising out of coal mine employment, including chronic pulmonary disease resulting from respiratory or pulmonary impairment significantly related to or significantly aggravated by dust exposure in coal mine employment.

This explication corresponds with the regulations' definition of "legal pneumoconiosis" and their instruction regarding when a disease "aris[es] out of coal mine employment." 20 C.F.R. § 718.201(a)(2), (b).

True, the "no-part" standard applies specifically to the second rebuttal method (disability causation). *See id.* § 718.305(d)(1)(ii) ("[T]he party opposing entitlement may rebut the presumption by . . . [e]stablishing that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis . . . ."). But we do not conclude that the ALJ held Consol to the wrong standard. For one, as their regulatory definitions demonstrate, legal pneumoconiosis and disability causation are "closely related." *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1062 (6th Cir. 2013); *see also Brandywine Explosives & Supply v. Kennard*, 790 F.3d 657, 668 (6th Cir. 2015) ("[T]he only remaining question was what caused the additional respiratory impairment—an issue resolved by the earlier finding of legal pneumoconiosis. There was no need for the ALJ to analyze the [doctors'] opinions a second time."). Plus, as the Board put it, the ALJ "permissibly determined that the reasons that undercut the probative value of the opinions of Drs. Goldstein and Hippensteel on the issue of legal pneumoconiosis also undercut the probative value of their opinions that pneumoconiosis did not play any role in claimant's totally disabling respiratory or pulmonary impairment." Indeed,

because the issues overlap, the ALJ signaled that she would "address most of the rebuttal evidence at the same time."

At bottom, rebutting the presumption of legal pneumoconiosis "requires 'that the evidence affirmatively proved the absence of pneumoconiosis.'" *Kennard*, 790 F.3d at 668 (quoting *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 480 n.5 (6th Cir. 2011)). Here, the ALJ found that "the medical evidence does not establish that [Eskut] does not have legal pneumoconiosis." We discern no reversible error on this issue.

### 2. *ALJ's Assessments of Dr. Goldstein and Dr. Hippensteel*

Consol insists that the ALJ's reasons for discrediting Dr. Goldstein's and Dr. Hippensteel's opinions that Eskut did not suffer legal pneumoconiosis were "irrational, unsupported by substantial evidence, and contrary to law." We disagree.

#### a. Dr. Goldstein

The ALJ reviewed Dr. Goldstein's opinion and deposition testimony, summarizing both thoroughly. Dr. Goldstein opined that Eskut's ailments showed no evidence of pneumoconiosis. In particular, he concluded that coal dust did not cause Eskut's COPD because Eskut's pulmonary function testing showed reversibility. According to Dr. Goldstein, Eskut's COPD would not be reversible if it related to pneumoconiosis, and so Eskut's decades of smoking cigarettes must have caused his lung impairment.

But the ALJ discredited Dr. Goldstein for failing to "address what may have caused the residual impairment that remained after bronchodilators were administered." She continued:

> For example, in the pulmonary function test Dr. Goldstein administered on June 20, 2013, the Claimant's $FEV_1$ value rose, with bronchodilators, from 46% of predicted (1.53 liters), but only to 57% of predicted (1.89 liters). I would expect a Board-certified pulmonary physician, cognizant that a patient has a significant history of coal mine employment, as well as a significant past history of smoking,

would recognize the import of a significant residual irreversible impairment. Such an impairment, as Dr. Goldstein himself recognized may be indicative of pneumoconiosis.

Consol stresses this as an example of the ALJ inappropriately playing doctor. We, however, perceive this as the ALJ properly explaining a reason for discrediting Dr. Goldstein's opinion. *See, e.g.*, *Kennard*, 790 F.3d at 666 (citing favorably the ALJ's discounting a doctor's opinion of no pneumoconiosis because doctor overlooked several respiratory tests that "showed that Kennard's disease was not responsive to bronchodilators"). And the several lines Consol cites from Dr. Goldstein's deposition do not convince us that the doctor actually addressed, with any sufficiency, Eskut's residual post-bronchodilator impairment.

The ALJ also discounted Dr. Goldstein's opinion that cigarette smoking caused Eskut's chronic bronchitis. As she explained, "the fact that cigarette smoking is the 'most common' cause of chronic bronchitis and emphysema is not sufficient to establish the cause of chronic bronchitis in" Eskut's case because of his significant residual post-bronchodilator impairment and twenty-plus years working in the mines. Again, Consol implores us to conclude that the ALJ overlooked Dr. Goldstein's discussion of these issues. But the company misapprehends our role. "Rather than review whether the ALJ has meticulously discussed every piece of evidence that may be missing, we review merely whether [s]he has reviewed all relevant evidence, applied the proper legal standard, and reached a conclusion based on substantial evidence." *Ogle*, 737 F.3d at 1073. With respect to Dr. Goldstein's opinions, we conclude that the ALJ has done all three.

   b. Dr. Hippensteel

The ALJ reviewed Dr. Hippensteel's opinion and deposition as thoroughly as she did Dr. Goldstein's. Dr. Hippensteel diagnosed an obstructive respiratory impairment consistent with

asthmatic bronchitis, concluding that the condition was not caused by coal dust exposure because it developed after Eskut left the mines.

The ALJ downplayed Dr. Hippensteel's opinion because he "did not explain why, in [Eskut's] case, he ruled out his history of coal dust exposure as a factor in the development of his asthmatic bronchitis." Consol avers otherwise, noting that Dr. Hippensteel's reasons for this conclusion included that the presence of tree-in-bud opacities on the CT scan did not reveal pneumoconiosis and that the medical literature does not associate asthma with coal mine dust. But the ALJ's conclusion that Dr. Hippensteel's opinion was not sufficiently reasoned "is a matter of credibility, which we cannot revisit." *Ogle*, 737 F.3d at 1073 (citation omitted). Reweighing the evidence would also be inappropriate. *See id.*

Further discrediting Dr. Hippensteel's opinion that Eskut did not have legal pneumoconiosis, the ALJ expounded:

> Dr. Hippensteel also relied on the fact that the Claimant's chronic bronchitis developed long after he left the coal mines, whereas in Dr. Hippensteel's view chronic bronchitis due to coal mine dust exposure would be expected to impair function during active exposure, and improve after such exposure ceased. This is contrary to the concept, recognized by the Act, that disabling pneumoconiosis, whether clinical or legal, can develop years after a miner leaves the mines.

Consol declares that this overextends the concept of latent and progressive pneumoconiosis, professing that merely because "pneumoconiosis *may* develop after exposure ceases does not mean that all miners that develop lung disease after exposure ceases always have 'progressive and latent' forms of pneumoconiosis." Yet we deem this a reasonable determination for the ALJ to make, especially given its consistency with federal regulations. *See Duncan*, 2018 WL 2050669, at *8 ("[T]he regulatory recognition in 20 C.F.R. § 718.201(c) that pneumoconiosis is

a latent and progressive disease applies to both clinical and legal pneumoconiosis," and "the lack of medical evidence about legal pneumoconiosis is a feature, not a bug.").

Consol contends that cigarette smoking and asthma were better clinical explanations for Eskut's disability than coal mine dust. It thus asks us to reweigh the evidence and substitute our judgment for the ALJ's. We cannot and do not—even if we would have viewed the evidence differently, "[w]e defer to the ALJ's determination whether the explanations are adequate and will not disturb [her] reasonable findings." *Ogle*, 737 F.3d at 1074.

### 3. ALJ's Assessment of Dr. O'Reilly

Consol briefly presses that Dr. O'Reilly's medical opinion helped rebut the presumption of legal pneumoconiosis. But the ALJ's contrary conclusion seems a reasonable one, given Dr. O'Reilly testified "I think [Eskut] has legal pneumoconiosis." Yes, O'Reilly opined that Eskut's respiratory disability was caused primarily by smoking and secondarily by coal mine dust. But this does not mean that, as Consol submits, "the ALJ overlooked that Dr. O'Reilly failed to find the necessary significant causal role or substantial aggravating factors necessary to diagnose legal pneumoconiosis." In fact, Dr. O'Reilly testified "that the coal dust exposure caused or contributed to cause" Eskut's COPD. *Cf. Kennard*, 790 F.3d at 668 ("The only question is whether smoking alone caused the COPD or whether it was also caused or worsened by the coal-mine dust exposure."). The ALJ thoroughly reviewed Dr. O'Reilly's opinions and deposition testimony; her "determination[] to credit . . . these medical opinions based on whether they are sufficiently documented and reasoned is a credibility matter that we must leave to the ALJ." *Ogle*, 737 F.3d at 1073.

## III.

For those reasons, we DENY the petition for review.