NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0163n.06

**No. 15-3008**

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **LANCE COAL CORPORATION/GOLDEN OAK MINING CO., INC.,** | **FILED**<br>Mar 22, 2016<br>DEBORAH S. HUNT, Clerk |
| **Petitioner,** | |
| v. | **ON PETITION FOR REVIEW FROM THE UNITED STATES DEPARTMENT OF LABOR, BENEFITS REVIEW BOARD** |
| **PHILLIP W. CAUDILL and DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,** | |
| **Respondents.** | |

BEFORE:    NORRIS, CLAY, and COOK, Circuit Judges.

**CLAY, Circuit Judge.**    Lance Coal Corporation/Golden Oak Mining Company, Inc. ("Lance Coal") petitions for review of the Benefits Review Board's (the "Board") decision affirming the Administrative Law Judge's ("ALJ") award of black lung benefits to Respondent Phillip Caudill, a former coal miner. The ALJ awarded benefits under the Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901, *et seq.*, based on his conclusion that Caudill was totally disabled due to legal pneumoconiosis arising from coal mine employment. For the following reasons, we **DENY** Lance Coal's petition for review.

### I.    Factual Background

In order to qualify for federal benefits under the Act, the claimant must demonstrate that he or she is a miner or former miner and totally disabled due to pneumoconiosis arising from

coal mine employment. 20 C.F.R. § 725.202(d); *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 486 (6th Cir. 2014). The Act and its corresponding regulations recognize two forms of pneumoconiosis: clinical and legal pneumoconiosis. *Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs*, 790 F.3d 657, 661 (6th Cir. 2015). "Clinical pneumoconiosis refers to a specific set of enumerated diseases, while legal pneumoconiosis 'is a broader and less definite term that refers to any chronic lung disease that was caused . . . by exposure to [coal mine] dust.'" *Id.* (quoting *Cent. Ohio Coal*, 762 F.3d at 486). Between March 2010 and December 2011, Caudill was examined by four physicians tasked with assessing whether he was totally disabled due to pneumoconiosis of either form.

The first examination, which was sponsored by the Department of Labor ("DOL"), was conducted by Dr. Katie DeFore, a physician board-certified in internal medicine, on March 24, 2010.[1] Dr. DeFore physically examined Caudill, documented his social and work history, administered a pulmonary function test ("PFT") and arterial blood gas study, and recorded the results of an x-ray performed and read by a board-certified radiologist. In her report, Dr. DeFore credited Caudill with 20 years of coal mine employment, observed that he was a lifelong non-smoker, and noted that he had a family history of cardiac disease. She recorded his height as 71.25 inches, his weight as 274 pounds, and noted that Caudill's main complaints were occasional sputum production, dyspnea[2] with minimal exertion, orthopnea that required him to sit up at night or sleep in his recliner,[3] and paroxysmal nocturnal dyspnea.[4] Caudill claimed that

---

[1] Under the Act, the DOL must provide a miner who so requests with the "opportunity to substantiate his or her claim by means of a complete pulmonary evaluation" "at no expense to the miner." 30 U.S.C. § 923(b); 20 C.F.R. § 725.406(a).

[2] Dyspnea is defined as "breathlessness or shortness of breath; difficult or labored respiration." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 582 (32d ed. 2012).

[3] Orthopnea is "dyspnea that is relieved by assuming an upright position." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1338 (32d ed. 2012).

each of these issues had been affecting him for the past one to two years and told Dr. DeFore that his main limitation was his breathing.

Based on the negative interpretation by the radiologist who performed the x-ray, Dr. DeFore concluded that there was no evidence that Caudill had clinical pneumoconiosis. However, Dr. DeFore determined that Caudill had legal pneumoconiosis based on his qualifying FEV1[5] value of 54%, which did not improve with bronchodilator therapy, and his abnormal physiological response to exercise, which resulted in a decrease in his pO2. She also noted that Caudill had hypoxemia[6] on room air and a moderate restrictive defect affecting his lung capacity. Overall, Dr. DeFore concluded that Caudill was "totally impaired from a pulmonary standpoint," and that his legal pneumoconiosis "likely entirely contribute[d] to his [pulmonary] impairment" because he had "no history of smoking and no other known exposures that w[ould] lead him to have this impairment." (J.A., PageID# 52, 276).

On August 19, 2010, Dr. Gregory Fino, a physician board-certified in both internal and pulmonary medicine, examined Caudill for a second time at Lance Coal's request. In a corresponding medical report dated September 15, 2010, Dr. Fino noted the following. Caudill reported using both a nebulizer and supplemental oxygen and stated that he had been experiencing shortness of breath for the past six years when walking on level ground, ascending stairs or hills, or performing manual labor. Caudill also complained of a daily cough and mucus production that began when he was working as a coal miner. The report credited Caudill with

---

[4] The "paroxysmal" component of this ailment describes the "sudden recurrence or intensification of symptoms" of dyspnea, while "nocturnal" denotes that the symptoms "pertain to, occur at, or are active at night." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1279, 1384 (32d ed. 2012).

[5] The FEV1 value measures the "forced expiratory volume in one second," *i.e.*, the volume of air that can be blown out of the lungs after taking a full breath . . . in one second." *Cent. Ohio Coal*, 762 F.3d at 491 n.3.

[6] Hypoxemia is deficient oxygenation of the blood. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 908 (32d ed. 2012).

working in the coal mine industry for 20 years, noted his history of heart problems, and recorded his height and weight, respectively, as 72 inches and 260 pounds.

After conducting a physical examination of Caudill, Dr. Fino concluded that his lungs were clear with no wheezes, rales, rhonchi, or rubs. Dr. Fino also interpreted Caudill's chest x-ray as negative for clinical pneumoconiosis. Ultimately, his report found that Caudill's spirometry,[7] diffusing capacity, and lung volume values were "invalid," but concluded that the PFT performed by Dr. DeFore was valid.

Dr. Fino's report noted that Caudill had mild hypoxemia and hypercarbia[8] but opined that these conditions were "due to [Caudill's] body habitus."[9] (*Id.* at 104–05, 277). Overall, the report concluded that (1) Caudill's pulmonary system was normal "[f]rom a functional standpoint," (2) "[t]here [wa]s insufficient objective medical evidence to justify a diagnosis of clinical or legal . . . pneumoconiosis," and (3) there was "no intrinsic lung abnormality present that would prevent him from returning to his last mining or a job requiring similar effort." (*Id.*).

In addition to sponsoring Dr. Fino's September 15, 2010 medical report, Lance Coal took his deposition on January 23, 2012. In his deposition, Dr. Fino observed that Caudill's coal mine employment "required heavy and . . . maybe very heavy manual labor," and that Caudill "certainly had enough coal dust exposure [over the course of his career] to cause a coal dust related disease." (*Id.* at 251–52). However, he opined, coal dust exposure alone was not enough to warrant a diagnosis of pneumoconiosis, and the fact that Caudill had only begun experiencing shortness of breath approximately 17 years after his coal mine employment ended "kind of

---

[7] Spirometry refers to the measurement of the breathing capacity of the lungs, including through the use of PFTs. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1751 (32d ed. 2012).

[8] Hypercarbia, also known as hypercapnia, is an excess of carbon dioxide in the blood. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 887 (32d ed. 2012).

[9] A person's habitus is his or her build or physique. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 815 (32d ed. 2012).

[went] against the coal dust related etiology."[10] (*Id.* at 252, 278). Finally, Dr. Fino opined that Caudill did not have pneumoconiosis because some of his arterial blood gas studies improved over time and pneumoconiosis is "irreversible" and "doesn't improve." (*Id.* at 256, 258).

Dr. Ronald Klayton, who is board-certified in internal medicine with a subspecialty in pulmonary disease, conducted Caudill's third examination on September 13, 2011. Dr. Klayton noted that Caudill had never smoked and credited him with 26 years of coal mine employment,[11] including jobs that involved heavy lifting, heavy rock dust exposure, and light coal dust exposure. Among other things, Dr. Klayton's medical report stated that Caudill had diabetes and high blood pressure, used a nebulizer twice per day, and had been using a machine for sleep apnea for approximately six months. The report also noted that Caudill had been hospitalized for rapid atrial fibrillation and undergone an ablation procedure[12] in 2008. Dr. Klayton characterized Caudill as an "overweight gentleman" and recorded his height at 72 inches and weight as 265 pounds. At the time of the examination, Caudill told Dr. Klayton that he could only lift up to 25 pounds.

According to Dr. Klayton's report, Caudill's complaints included shortness of breath with exertion for the past five years, shortness of breath from walking a short distance up a hill or walking up about eight steps, a mild daily cough producing small amounts of yellow or white sputum for the past three years, and paroxysmal dyspnea three or four times per week. Dr. Klayton noted that Caudill's chest x-ray lacked any indication of clinical pneumoconiosis but

---

[10] Etiology refers to the "theory of the factors that cause disease and the method of their introduction to the host; the causes or origin of a disease or disorder." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 652 (32d ed. 2012).

[11] It is unclear from the record how Dr. Klayton arrived at this figure for Caudill's length of employment, but we, like the ALJ, note that it is higher than the figure the ALJ relied on in his order granting benefits.

[12] An ablation refers to the removal or destruction of a part, particularly by cutting. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 3 (32d ed. 2012).

showed pleural plaques on the right side measuring up to one-quarter inch of the lateral chest wall. He also observed that Caudill's PFTs showed moderate restrictive lung disease and reduced diffusing capacity.

Overall, Dr. Klayton concluded that Caudill had legal pneumoconiosis based on "a history of 26 years of coal-mine employment, dyspnea on mild exertion, a daily productive cough of three years duration, moderate restrictive lung disease with decreased diffusing capacity on pulmonary function tests, mild hypoxia on resting arterial blood gas[] [studies], and a chest x-ray showing pleural plaques consistent with pneumoconiosis." (*Id.* at 171, 279–80). He opined that although "[o]besity could be a contributing factor to the restrictive lung disease, [obesity] would not cause decreased diffusing capacity or resting hypoxemia." (*Id.* at 171, 280). Finally, Dr. Klayton concluded that degree of Caudill's impairment was severe because Caudill "[could] not walk more than a short distance without having to stop to rest and [could] not lift more than 25 pounds. He therefore would not be able to return to his previous coal mine employment." (*Id.*).

At Lance Coal's request, Dr. James Castle, who is board-certified in internal medicine and pulmonary disease, conducted Caudill's fourth and final examination on November 30, 2011, and memorialized the results in a report dated December 12, 2011. Dr. Castle noted that Caudill reported having spells of wheezing that worsened in cold weather, shortness of breath for the past five or six years, and an intermittent cough that usually produced sputum for the past four or five years. Dr. Castle's report stated that Caudill could walk at least 500 feet at ground level without stopping due to shortness of breath, but that he avoided climbing stairs, hills, or banks because they "cause[d] him so much difficulty." (*Id.* at 180). The report credited Caudill with between 20 and 25 years of coal mine employment, including underground and surface

mining. Like the other three physicians, Dr. Castle noted that Caudill was a lifelong non-smoker. The report noted that Caudill was obese, measuring his height as 69.5 inches and his weight as 265 pounds.

Dr. Castle performed a chest x-ray and found that it revealed "no evidence of [clinical] pneumoconiosis." (*Id.* at 182, 280). He also conducted PFTs that yielded values consistent with "mild restrictive lung disease without obstruction or diffusion abnormality." (*Id.*).

Prior to compiling his medical report, Dr. Castle reviewed some of Caudill's medical records dating back to 2004, including the medical reports authored by Drs. DeFore and Fino. Ultimately, Dr. Castle concluded that Caudill did not suffer from clinical or legal pneumoconiosis and, like Dr. Fino, attributed Caudill's breathing difficulties to his obesity. The report characterized Caudill as "very significantly obese," with a body mass index of 38.46, and opined that "[t]his degree of obesity may be associated with a number of medical problems including obstructive sleep apnea syndrome, hypertension, diabetes, and heart disease . . . [as well as] significant shortness of breath . . . [,] restrictive lung disease[,] and hypoxemia and hypercapnia . . . ." (*Id.* at 189). Dr. Castle also asserted that Caudill's shortness of breath could be attributable to his history of cardiac disease. Like Dr. Fino, Dr. Castle characterized pneumoconiosis as "fixed and irreversible," opining that Caudill's PFT values would not have improved between his March 24, 2010 and November 30, 2011 examinations if he suffered from pneumoconiosis. Finally, Dr. Castle concluded that it was "possible that [Caudill] [wa]s permanently and totally disabled as a whole man because of his cardiac disease," but "this [wa]s unrelated to coal mining employment and dust exposure." (*Id.* at 191).

Lance Coal deposed Dr. Castle on January 5, 2012. At the deposition, Dr. Castle commented that Caudill had "an interesting cardiac history" based on his various cardiac

procedures and history of heart disease. Dr. Castle also asserted that Caudill's shortness of breath was not specific to any particular medical condition, but could result from "a number of different pulmonary, cardiac, and other types of conditions." (*Id.* at 225–26). Attributing Caudill's shortness of breath to his obesity and resulting "obesity hypoventilation syndrome," Dr. Castle emphasized that Caudill's PFT values had improved over time and that such a result was likely due to fluctuations in his weight rather than positive changes in his pulmonary health because pulmonary impairments caused by coal dust exposure are irreversible. Although he acknowledged that pneumoconiosis can be a latent and progressive disease, he maintained that the disease "isn't one that gets better," and concluded that Caudill did not have legal pneumoconiosis. (*Id.* at 230).

## II.      Procedural Background

Caudill filed his claim for federal black lung benefits on February 16, 2010. After conducting a formal hearing, the ALJ issued a Decision and Order Awarding Benefits on August 29, 2013.

In the decision and order, the ALJ noted the following. The total length of Caudill's coal mine employment, calculated using his Social Security records, was 17.75 years.[13] The majority of Caudill's employment involved surface mining operations, with Caudill working underground for approximately three years and above ground for more than fourteen years. Among other things, Caudill's tasks involved operating a battery motor, driving coal trucks, and working as a mechanic operating drills, graders, dozers, and augers. Caudill's work regularly required him to lift objects weighing more than 100 pounds, and he was occasionally asked to lift objects

---

[13] The ALJ only counted those quarters in which Caudill earned $50.00 or more from his work in the coal mines, resulting in an employment history calculation that was shorter than each of the figures credited by the examining physicians.

weighing up to 125 pounds. Based on Caudill's testimony that he was exposed to dusty conditions at each of the aboveground mines where he was employed due to the (1) proximity of the surface operations to the underground mines, (2) lack of breathing protection, including respirators, (3) lack of dust control, including water to spray down dust on the roads, and (4) use of vehicles with open rather than closed cabs, the ALJ concluded that Caudill had met his burden of demonstrating that his employment with the surface mines involved conditions "substantially similar" to those in an underground mine. *See* 30 U.S.C. § 921(c)(4).

Next, the ALJ considered whether Caudill had proffered evidence demonstrating that he suffered from a total respiratory disability. The regulations provide that "a miner shall be considered totally disabled if the miner has a pulmonary or respiratory impairment which, standing alone, prevents . . . the miner" from performing his usual coal mine work and engaging in employment requiring skills and abilities comparable to his usual coal mine work. 20 C.F.R. § 718.204(b)(1). A claimant may show total disability through (1) PFTs with qualifying values, (2) arterial blood gas tests with qualifying values, (3) medical evidence that the miner is suffering from cor pulmonale with right-sided congestive heart failure, or (4) if (1)–(3) do not apply, a physician's well-documented, well-reasoned medical opinion finding that the miner's respiratory or pulmonary condition prevents him from engaging in coal mine employment.[14] 20 C.F.R. § 718.204(b)(2).

The ALJ concluded that Caudill could not establish total disability through the PFTs because they either yielded non-qualifying values or were found to be invalid by one of the examining physicians. Similarly, Caudill could not show total disability through the arterial

---

[14] A physician exercising sound medical judgment may find that a claimant has legal pneumoconiosis "based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding must be supported by a reasoned medical opinion." 20 C.F.R. § 718.202(a)(4).

blood gas studies because nearly all of these studies yielded non-qualifying values. Lastly, Caudill could not establish total disability under 20 C.F.R. § 718.204(b)(2)(iii) because there was no evidence that he suffered from cor pulmonale with right-sided congestive heart failure.

Having found that Caudill did not establish total disability through the aforementioned medical evidence, the ALJ next examined whether the recorded supported a finding of total disability based on a physician's well-documented, well-reasoned medical opinion. The ALJ noted that both of Lance Coal's physicians—Drs. Fino and Castle—found that Caudill was not totally disabled. By contrast, Drs. DeFore and Klayton found that Caudill was totally disabled due to a respiratory impairment.

In reaching his conclusion that Caudill suffered from legal pneumoconiosis, the ALJ accorded greater weight to the medical opinions of Drs. DeFore and Klayton, and less weight to the opinions of Drs. Fino and Castle. The ALJ found that "[u]nlike Drs. Fino and Castle, Drs. DeFore and Klayton effectively explained how [Caudill's] condition made him unable to return to his previous coal mine employment." (J.A., PageID# 287). Specifically, Dr. DeFore explained that Caudill's low FEV1 value and abnormal physiological response to exercise would prevent him from returning to his previous coal mine employment, which involved working on heavy machinery, while Dr. Klayton opined that Caudill was unable to perform coal mine work because he could not walk more than a short distance without stopping to rest and could not lift more than 25 pounds. Although the ALJ noted that Dr. Klayton credited Caudill with a notably longer employment history than that calculated by the ALJ—26 years as opposed to 17.75—he concluded that "the logic behind [Dr. Klayton's] well explained opinion that [Caudill] is no longer able to engage in high levels of exertion is not directly impacted by this overestimate and therefore not diminished." (*Id.*). Finally, the ALJ "g[a]ve less weight to [the opinions of] Dr.

Fino and Dr. [Castle][15] because neither doctor explained how [Caudill] still retained the respiratory capacity to return to his previous coal mine employment given the heavy exertion level of that position and [Caudill's] inability [to] walk long distances without stopping, amongst other breathing-related issues." (*Id.*). For these reasons, the ALJ concluded that Caudill had established that he was entitled to 20 C.F.R. § 718.305(b)'s rebuttable presumption of total disability based on (1) his more than 15 years of coal mine employment in both underground mines and surface mines with conditions substantially similar to those found in underground mines, and (2) the well-documented, well-reasoned opinions of Dr. DeFore and Klayton finding that he was totally disabled due to a respiratory impairment. We refer to this particular presumption as the 15–year presumption. *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1066 (6th Cir. 2013); *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 479 (6th Cir. 2011). As noted by the ALJ, based on Caudill's invocation of the 15–year presumption, the burden shifted to Lance Coal "to rebut the presumption by establishing either (a) that [Caudill] did not have pneumoconiosis; or (b) that his respiratory or pulmonary impairment did not arise out of, or in connection with, coal mine employment." (*Id.* at 288) (citing *Morrison*, 644 F.3d at 480).

Next, the ALJ examined whether Lance Coal had rebutted the 15–year presumption through its reliance on the medical opinions proffered by Drs. Fino and Castle, ultimately articulating several reasons why he found that both opinions were entitled to little weight. First, Dr. Fino's argument that Caudill did not have pneumoconiosis based on the non-qualifying PFT and arterial blood gas values was "misguided" because, under Board precedent, neither of these tests could be used to disprove the existence of pneumoconiosis. Second, Dr. Fino's medical opinion neither accounted for nor refuted the possibility that both Caudill's coal dust exposure

---

[15] The ALJ's reference to Dr. Klayton in this sentence appears to have been in error.

*and* his obesity could have contributed to his hypoxemia and other symptoms of respiratory impairment. Third, Dr. Fino's attempt to discount the possibility that Caudill had pneumoconiosis based on the 17-year gap between the termination of his coal mine employment and the development of his respiratory impairments was contrary to the Act's regulations, which recognize pneumoconiosis as a "latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." 20 C.F.R. § 718.201(c)).

The ALJ also credited Dr. Castle's opinion with little weight. As an initial matter, the ALJ noted that Dr. Castle attributed Caudill's hypoxemia, restrictive lung disease, and shortness of breath exclusively to his obesity and cardiac disease. Additionally, Dr. Castle opined that Caudill's improved PFT values were "not possible or likely" if Caudill had pneumoconiosis because pneumoconiosis is progressive and irreversible. The ALJ discredited Dr. Castle's conclusion that Caudill did not have pneumoconiosis on two grounds. First, the ALJ found that "Dr. Cast[le's] assertions on reversibility fail[ed] to address the possibility that [Caudill's] condition may be attributable, in part[,] to marginally reversible causes [as well as] . . . the lasting and non-reversible effects of his employment related exposure to coal dust." (J.A., PageID# 292). Second, the ALJ concluded that "like Dr. Fino, Dr. Castle also failed to explain why [Caudill's] 17.75 years of coal mine employment did not contribute to his hypoxemia, restrictive lung disease, and shortness of breath, and why those diseases could not have arisen, in part, from his work as a coal miner." (*Id.*)

Lastly, the ALJ noted that no other medical evidence supported Lance Coal's attempt to rebut the 15–year presumption. The medical opinions of Drs. DeFore and Klayton found that Caudill suffered from a respiratory impairment arising from his coal mine employment and concluded that Caudill suffered from legal pneumoconiosis. Similarly, Caudill's medical records

indicated that he had been diagnosed with mild chronic obstructive pulmonary disease ("COPD") in 2009, and that there were no other plausible causes of his COPD because he was a lifelong non-smoker.

Ultimately, the ALJ concluded that Lance Coal failed to disprove the existence of pneumoconiosis because Drs. Fino and Castle's medical opinions were not well-reasoned and no other medical evidence supported their conclusions that Caudill did not have legal pneumoconiosis. Noting the "considerable overlap" between the question of whether the employer can show the miner does not have pneumoconiosis, *see* 20 C.F.R. § 718.305(d)(1)(i), and the question of whether the employer can show that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis," *see* 20 C.F.R. § 718.305(d)(1)(ii), the ALJ concluded that Lance Coal failed to rebut the presumption of pneumoconiosis under both prongs and awarded benefits under the Act.

On appeal, the Board affirmed the ALJ's award of benefits. The Board noted that Drs. DeFore and Klayton's medical opinions concluding that Caudill was totally disabled relied on PFTs and arterial blood gas studies showing that Caudill had a moderate restrictive defect, reduced diffusing capacity, and hypoxemia. The Board also agreed with the ALJ's finding that Drs. DeFore and Klayton's medical opinions were persuasive because the opinions interpreted the medical evidence, "set forth the rationale for their findings," and "explained why they concluded that [Caudill] [wa]s unable to perform the duties of his usual coal mine work." (J.A., PageID #300). Finally, the Board opined that the ALJ had a well-reasoned, well-supported basis for giving less weight to the medical opinions of Drs. Fino and Castle because these physicians concluded that Caudill's respiratory ailments were attributable solely to his obesity without adequately explaining how they eliminated Caudill's coal dust exposure as another possible

source of his impairments. For these reasons, the Board affirmed the ALJ's order awarding benefits and denied Lance Coal's motion for reconsideration. Lance Coal timely petitioned for review.

### III.    Discussion

In its briefs, Lance Coal raises two issues: (1) whether the ALJ's finding that Caudill was totally disabled due to pneumoconiosis was supported by substantial evidence based on a reasonable weighing of the conflicting medical testimony from Drs. Defore, Fino, Klayton, and Castle; and (2) whether the ALJ violated the APA by failing to adequately articulate the reasons he assigned greater weight to the medical opinions of Drs. DeFore and Klayton, who found that Caudill suffered from legal pneumoconiosis, and less weight to the medical opinions of Drs. Fino and Castle, who concluded that Caudill did not suffer from clinical or legal pneumoconiosis. We note that the Director of the Office of Workers' Compensation Programs has appeared in this matter as a respondent. Although the Director takes no position as to Caudill's entitlement to benefits under the Act, the Director challenges Lance Coal's argument that the Administrative Procedures Act ("APA") required the ALJ to afford less weight to Drs. DeFore and Klayton's medical opinions because they did not account for later developed medical evidence, *i.e.*, the medical opinions of Drs. Fino and Castle, that was inconsistent with their findings. Because this second issue—the amount of weight the ALJ should have afforded to each of the conflicting medical opinions—underlies the first—whether the ALJ's finding that Caudill had pneumoconiosis was reasonable based on his weighing of the medical evidence—we address Lance Coal's weight of the evidence argument first.

## A. Whether the ALJ Violated the APA

Under the APA, all administrative decisions must include a statement of the decision maker's "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). We have interpreted this requirement to impose a duty on the ALJ to "accurately and specifically . . . reference the evidence supporting his decision." *A & E Coal Co. v. Adams*, 694 F.3d 798, 802 (6th Cir. 2012) (citing *Morehead Marine Servs., Inc. v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998)). In assessing compliance with § 557(c)(3)(A)'s directive, the key inquiry is whether the ALJ discussed the evidence before her in a sufficiently specific and thorough matter to adequately explain the reasons for her conclusions on all material issues. *See, e.g., A & E Coal*, 694 F.3d at 802–03 (holding that the ALJ complied with APA where he thoroughly, accurately, and specifically discussed the evidence supporting his conclusions regarding the credibility of the physicians' medical testimony); *Yeager v. Cal-Glo Coal. Co.*, No. 99-4310, 2000 WL 1888768, at *3–4 (6th Cir. Dec. 22, 2000) (holding that the ALJ satisfied the APA's requirements where he analyzed the physicians' medical opinions, summarized their diagnoses, and stated his rationale for finding for finding certain opinions more persuasive than others); *Peabody Coal Co. v. Wilkins*, No. 97-3123, 1998 WL 416016, at *1–2 (6th Cir. July 9, 1998) (rejecting the defendant's APA challenge where the ALJ's explanations were "sufficiently reasoned to enable [the Court] to undertake meaningful review").

According to Lance Coal, "[t]he APA mandates that an ALJ's decision be accompanied by a clear and satisfactory explanation of the basis on which it rests," and the ALJ's order awarding benefits "fail[s] to meet these standards." *Appellant's Br.* at 16. More specifically, Lance Coal argues that the ALJ failed to consider facts that detracted from Drs. DeFore and

Klayton's medical opinions, including improved, non-qualifying PFT and arterial blood gas values derived from later studies performed by Drs. Fino and Castle. Lance Coal also asserts that the ALJ was required, under the APA, to explain why the medical opinions of Drs. DeFore and Klayton were not invalidated, or at least afforded less weight, based on the opinions' failure to account for "subsequent" medical evidence, including evidence of which Drs. DeFore and Klayton were "unaware."

The Director maintains that imposing a categorical rule that requires ALJs to conclude that a "doctor's opinion that does not account for later-developed evidence inconsistent with the doctor's own findings is per se undocumented and unreasoned," would (1) be contrary to the Act and its regulations, (2) undermine the ALJ's discretion, as the fact-finder, to credit or discredit opinions based on whether they are well reasoned and supported by objective medical evidence, and (3) accelerate the production of medical evidence in black lung cases. *Gov't Respondent's Br.* at 19–26. For the following reasons, we agree with each of these contentions.

First, we find that requiring ALJs to discredit or afford less weight to medical opinions that do not or (due to the chronology of when each medical examination occurred) cannot account for later developed medical evidence is contrary to the Act because the Act requires ALJs to consider "*all* relevant evidence" in determining whether a miner is eligible for black lung benefits. 30 U.S.C. § 923(b) (emphasis added). Indeed, the statute sets forth no chronology-based limit on the medical evidence the ALJ may consider, and imposes no balancing system requiring the ALJ to accord more weight to medical opinions that incorporate or account for older evidence and less weight to medical opinions that do not.

Second, we find that Lance Coal's suggested scheme would undermine the ALJ's ability, as the fact-finder, to independently weigh conflicting medical opinions based on the examining

physicians' credibility. This Circuit has made clear, on multiple occasions, that the ALJ's "determinations to credit or discredit [conflicting] medical opinions based on whether they are sufficiently documented and reasoned is a credibility matter that we must leave to the ALJ." *Big Branch*, 737 F.3d at 1073 (citations omitted); *see also Morrison*, 644 F.3d at 478 (stating that the Court's review of the ALJ's decision is limited to "consider[ing] whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence"); *Gray v. SLC Coal Co.*, 176 F.3d 382, 388 (6th Cir. 1999) (holding that an ALJ "may evaluate the relative merits of conflicting physicians' opinions and choose to credit one opinion over the other") (citation omitted). In weighing conflicting medical opinions, an ALJ errs only when he or she fails to consider all of the relevant evidence, applies an improper legal standard, or there is insufficient evidence to support the ALJ's findings and conclusions. *Morrison*, 644 F.3d at 478 (citations omitted).

Lance Coal cites this Court's opinion in *Director, Office of Workers' Comp. Programs v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983), for the proposition that the ALJ was required to "consider facts or evidence that detract from [the] physician's conclusions" in determining how much weight to attribute to each physician's medical opinion. *See Appellant's Br.* at 16, 21–22; *Reply Br.* at 2–3. In relevant part, *Rowe* vacated and remanded the ALJ's award of benefits because the ALJ "failed to set out and discuss all of the medical evidence presented" or "make important and necessary factual findings" in support of his conclusions. 710 F.2d at 254–56.

No such flaw affects the ALJ's decision and order in this case. As indicated above, the ALJ discussed the medical record for this matter in great detail, found that there was no indication that Caudill suffered from clinical pneumoconiosis, and noted the lack of qualifying values from the PFT and arterial blood gas studies to support invocation of the 15–year

presumption under sub-parts (i) and (ii) of 20 C.F.R. § 718.204(b)(2). Only after analyzing each physician's medical opinion did the ALJ reach his conclusion that the opinions of Drs. DeFore and Klayton warranted substantially greater weight than those of Drs. Fino and Castle, and that these opinions supported Caudill's invocation of the 15–year presumption under 20 C.F.R. § 718.204(b)(2)(iv). The ALJ also concluded that Lance Coal failed to rebut this presumption because Drs. Fino and Castle failed to explain how (1) they found that Caudill's respiratory or pulmonary impairment arose solely from his obesity as opposed to his coal mine employment and other factors, including his obesity, or (2) how Caudill would be able to return to his former coal mine employment or substantially similar employment in light of his acknowledged pulmonary impairments.

Lance Coal does not argue that the ALJ failed to consider relevant evidence and there is no indication that the ALJ's explanation of his reasons for affording more weight to certain medical opinions and less weight to others was incomplete or under-inclusive. Thus, despite Lance Coal's reassurances to the contrary, Lance Coal's invocation of *Rowe* seems to call for this Court to re-weigh the medical evidence rather than examine whether the ALJ failed to provide a sufficiently specific explanation of his reasons for weighing the conflicting medical opinions in the manner that he did under the APA. We shall not entertain such a request. *See, e.g., Big Branch*, 737 F.3d at 1074 (rejecting the employer's request to "reweigh the evidence [and] substitute our judgment for that of the ALJ") (citation omitted) (alteration in original); *Gray*, 176 F.3d at 387 ("We should not re-weigh the evidence or substitute our judgment for that of the ALJ.") (citation omitted).

Finally, we agree with the Director's assertion that Lance Coal's proposed scheme, which would require ALJs to afford less weight to medical opinions that do not account for later

18

developed medical evidence, or, at minimum, explain why such opinions do not deserve to be accorded less weight, is both unworkable and unfairly weighted against the miner.

With regard to workability, Lance Coal has failed to propose any kind of metric for measuring or defining what degree of "inconsistency" between a physician's medical opinion and later developed medical evidence would require the ALJ to afford less weight to that opinion. Without a reliable standard for measuring degrees of inconsistency, imposing the rule Lance Coal seeks would likely create uncertainty for litigants, increase the number of black lung appeals, and require this Court to engage in impermissible re-weighing of the evidence in adjudicating petitions for review.

In terms of tipping the scales in favor of the employer's interests and against the miner's, as noted previously, the Act provides that a miner seeking black lung benefits must be afforded a DOL-sponsored pulmonary examination at no expense. *See* 30 U.S.C. § 923(b); 20 C.F.R. § 725.406(a). According to the Director, this DOL-sponsored examination is almost always "the first to be conducted after a claim has been filed," and it is rare for the physician who administers this initial evaluation to "review[] later-developed evidence." *Gov't Respondent's Br.* at 24 (footnote omitted). Thus, a rule that categorically results in physicians' opinions being afforded less weight if they fail to account for contrary, later developed medical evidence and opinions would render the DOL's provision of a cost-free pulmonary examination largely meaningless because a DOL-sponsored examination would receive less weight any time there was an employer-sponsored examination that both accounted for and contradicted the medical evidence from the DOL examination. As indicated above, there is nothing in the Act or the regulations that dictates or even suggests that a medical opinion should be afforded more or less weight based on its chronology. Further, this type of rule would significantly weaken a miner's ability

to rely on a DOL-sponsored examination to support his claim for benefits and thereby increase the likelihood that he would have to rely on later examinations paid for out-of-pocket in order to assure that his physician's examination accounted for the evidence produced by any subsequent, employer-sponsored examinations.

In the same vein, such a scheme would likely tip the scales in black lung benefits cases in favor of employers because of their greater financial ability to engage in a medical opinions arm's race, trumping each medical opinion procured by the miner with a later, more comprehensive opinion by a physician of the employer's choosing. *See, e.g., Woodward v. Dir., Office of Workers' Comp. Programs*, 991 F.2d 314, 321 (6th Cir. 1993) (stating that "hiring armies of experts often results in needless expense" and "when one party is able to hire significantly more experts because it has infinitely more resources, the truthseeking function of the administrative proceeding is skewed and directly undermined"). Additionally, we have explicitly rejected the "later evidence rule" when the later developed evidence shows that the miner's pulmonary condition has improved—as is the case in this matter—because "*[i]t is impossible to reconcile the evidence*," and where "[e]ither the earlier or the later result *must* be wrong, . . . it is just as likely that the later evidence is faulty as the earlier." *Id.* at 319 (emphasis in original). Thus, "[t]he reliability of irreconcilable items of evidence must therefore be evaluated without reference to their chronological relationship." *Id.*; *see also Mullins Coal Co., Inc. of Va. v. Dir., Office of Workers' Comp. Programs*, 484 U.S. 135, 151 (1987) (stating that because pneumoconiosis is a progressive and irreversible disease, "early negative X-ray readings are not inconsistent with significantly later positive readings," but "[t]his proposition is not applicable where the factual pattern is reversed") (citation omitted).

For the aforementioned reasons, we reject Lance Coal's argument that the ALJ's order—including his underlying decision to afford greater weight to the medical opinions of Drs. DeFore and Klayton—does not comply with the APA's requirement that the fact-finder state the reasons and bases supporting his conclusions as to all materials issues of fact.

**B. Whether the ALJ's Conclusion that Caudill Suffered from Legal Pneumoconiosis was Supported by Substantial Evidence**

Second, we consider Lance Coal's argument that the ALJ's conclusion that Caudill was totally disabled due to legal pneumoconiosis was not supported by substantial evidence. "In reviewing an appeal from the Board, we review the Board's legal conclusions *de novo*." *Big Branch*, 737 F.3d at 1068 (citation omitted). Although this Court "must affirm the Board's decision 'if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determinations," our review "is 'focused on whether the ALJ—not the Board—had substantial evidence upon which to base his decision.'" *Morrison*, 644 F.3d at 477 (citation and ellipses omitted).

"The ALJ's findings are conclusive if they are supported by substantial evidence and are in accord with the applicable law." *Id.* (citation omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 478 (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985)); *accord Brandywine*, 790 F.3d at 664. "In deciding whether the substantial evidence standard is satisfied, we consider whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence." *Morrison*, 644 F.3d at 478 (citing *Peabody Coal Co. v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997)). "A remand or reversal is only appropriate when the ALJ fails to consider all of the evidence

under the proper legal standard or there is insufficient evidence to support the ALJ's finding." *Morrison*, 644 F.3d at 478 (citations omitted).

"We do not reweigh the evidence or substitute our judgment for that of the ALJ," *Big Branch*, 737 F.3d at 1069 (quoting *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001)), and we must uphold the ALJ's decision where it "'rest[s] within the realm of rationality.'" *Brandywine*, 790 F.3d at 664 (quoting *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 756 (4th Cir. 1999)). Therefore, as long as the substantial evidence requirement is met, "we may not set aside the ALJ's findings, 'even if we would have taken a different view of the evidence were we the trier of facts.'" *Morrison*, 644 F.3d at 478 (quoting *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985)).

As stated above, in order to be eligible for black lung benefits, Caudill needed to establish by a preponderance of the evidence that (1) he has pneumoconiosis, (2) his pneumoconiosis arose out of his coal mine employment, (3) his is totally disabled, and (4) his pneumoconiosis contributes to his total disability. 20 C.F.R. § 725.202(d)(2)(i)–(iv). In this case, the ALJ found that Caudill could invoke the Act's 15–year presumption that he was totally disabled due to pneumoconiosis because he (1) suffered from a total respiratory disability or pulmonary impairment and (2) was employed for fifteen years or more in an underground coal mine or a surface mine for which conditions "were substantially similar to conditions in an underground mine." 30 U.S.C. § 921(c)(4); *see also* 20 C.F.R. § 718.305(b). Thus, although Caudill bore the initial burden of establishing his entitlement to the 15–year presumption, once he was found eligible, Lance Coal was required "'to rebut the presumption of disability due to pneumoconiosis'" in order to prevail. *Brandywine*, 790 F.3d at 662 (quoting *Morrison*, 644 F.3d at 479).

In this case, the ALJ concluded that Caudill demonstrated his total disability through two well-documented, well-reasoned medical opinions finding that the Caudill's respiratory and pulmonary impairments prevented him from engaging in coal mine employment. The ALJ accorded more weight to the medical opinions of Drs. DeFore and Klayton and less weight to the opinions of Drs. Fino and Castle because he found that the former opinions were better-reasoned with regard to their conclusions regarding whether or not Caudill could perform his usual coal mine work or comparable work. As the ALJ noted, neither Dr. Fino nor Dr. Castle explained how Caudill retained the capacity to perform his usual coal mine work, which required heavy exertion, in light of his documented inability to walk more than short distances without experiencing shortness of breath. By contrast, the medical opinions of Drs. DeFore and Klayton, which noted that Caudill had hypoxemia, a low FEV1 value, an abnormal physiological response to exercise, mild restrictive lung disease, and a diminished ability to lift heavy objects, clearly explained why Caudill's legal pneumoconiosis prevented him from returning to his former, heavy exertion coal mine employment. Based on the medical evidence before the ALJ, we find that a "reasonable mind might accept" that Drs. Fino and Castle's failure to explain how Caudill could perform his usual, heavy exertion coal mine work in light of his acknowledged respiratory impairments warranted according these opinions with less weight. *See Brandywine*, 790 F.3d at 664. Further, because the ALJ's order adequately explained a rational basis, supported by the record, for crediting the two sets of medical opinions with different respective weights, we find that the ALJ's conclusion that Caudill was entitled to invoke the 15–year presumption satisfies the substantial evidence standard. *See Morrison*, 644 F.3d at 480.

Once Caudill invoked the 15–year presumption, the burden shifted to Lance Coal to rebut the presumption by establishing that (1) Caudill did not have pneumoconiosis or (2) Caudill's

respiratory or pulmonary impairment did not arise out of, or in connection with, his coal mine employment. *See* 30 U.S.C. § 921(c)(4); *see also Morrison*, 644 F.3d at 479; *Big Branch*, 737 F.3d at 1069. Ultimately, the ALJ found that Lance Coal failed to rebut the presumption because it could not disprove the existence of legal pneumoconiosis or demonstrate that Caudill's respiratory impairments were unrelated to his coal mine employment.

We have held that "[w]here the burden is on the employer to disprove a presumption, the employer must 'rule-out' coal mine employment as a cause of the disability." *Big Branch*, 737 F.3d at 1071. In other words, once the burden has shifted to the employer to rebut the 15–year presumption, the employer must "prove that pneumoconiosis *played no part* in causing a miner's disability." *Id.* (citation and quotation marks omitted) (emphasis in original); *Brandywine*, 790 F.3d at 667.

As noted by the ALJ, although Drs. Fino and Castle concluded that Caudill's respiratory impairments—including his hypoxemia, hypercarbia, and mild restrictive lung disease—arose solely from his obesity, they did not explain how they ruled out the possibility that Caudill's respiratory impairments arose in part from his obesity and in part from his more than 17 years of coal mine employment. Similarly, the opinions from both doctors, which opined that Caudill did not have legal pneumoconiosis because his PFT and arterial blood gas values improved somewhat over time, failed to account for the possibility that these improvements were attributable to "marginally reversible causes," such as alleviation of Caudill's obesity through weight loss,[16] even though Caudill still experienced permanent respiratory problems arising from the "lasting and non-reversible effects of his employment related exposure to coal dust." (J.A., PageID# 292). We have approved similar applications of the rule-out standard. *See Premium*

---

[16] Caudill weighed 274 pounds at the time that his DOL-sponsored examination yielded a qualifying value, and weighed 265 pounds or less at each of the three subsequent examinations.

*Coal Co. v. Dir., Office of Workers' Comp. Programs*, 619 F. App'x 447, 453 (6th Cir. 2015) ("Because the 15–year presumption applied in this case, it was not an error for the ALJ to require [the employer] to 'rule out' that [the miner's] coal mine employment aggravated his disability.") (citations omitted); *Island Creek Coal Co. v. Calloway*, 460 F. App'x 504, 510 (6th Cir. 2012) (finding that the defendant's physicians failed to "rebut the presumption by explaining why coal dust did not cause [the miner's] pneumoconiosis"). Further, we agree with the ALJ that Dr. Fino's clearest attempt to eliminate a causative link between Caudill's respiratory impairments and his coal mine employment—his emphasis on the 17-year gap between Caudill's retirement from coal mining and his first experiences with severe shortness of breath—directly conflicts with the regulations' recognition of pneumoconiosis as a "latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." 20 C.F.R. § 718.201(c).

Finally, the ALJ concluded that the same analytical shortcomings that prevented Lance Coal from showing that Caudill did not have pneumoconiosis also prevented it from showing that Caudill's respiratory or pulmonary impairment did not arise out of, or in connection with, his coal mine employment. On this record, such a conclusion is in accord with our precedent. *See Brandywine*, 790 F.3d at 668 (quoting *Morrison*, 644 F.3d at 480 n.5) (noting that "rebuttal requires 'that the evidence affirmatively proved the absence of pneumoconiosis'").

We find that a reasonable mind might accept the ALJ's decision to credit the medical opinions of Drs. Fino and Castle with little weight due to their inability to explain how they "ruled-out" the possibility that Caudill's respiratory impairments arose, at least in part, from his coal dust exposure. We also find that based on the minimal weight due to such opinions, they were insufficient to rebut the 15–year presumption. *See Big Branch*, 737 F.3d at 1071; *see also,*

*e.g., Premium Coal Co.*, 619 F. App'x at 453 (affirming ALJ's finding that the medical opinions proffered by the employer did not rebut the 15–year presumption because the opinions did not "address[] how bronchiectasis was mutually exclusive with the lung impairments referenced in the definition of legal pneumoconiosis" or why the miner's "15 years of mining exposure did not aggravate his rheumatoid arthritis and bronchiectasis") (citation omitted).  Once Caudill invoked the 15–year presumption, Lance Coal was required to rebut this presumption.  Because the ALJ's order adequately explains a rational basis, supported by the record, for his finding that Lance Coal failed to rebut the 15–year presumption, we find that the order satisfies the substantial evidence standard.  *See Morrison*, 644 F.3d at 478.

## CONCLUSION

For the reasons stated in this opinion, Lance Coal's petition for review is **DENIED**.