FILED
United States Court of Appeals
Tenth Circuit

January 25, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

RONALD L. JACKSON,

     Petitioner,

v.

BLACK BUTTE COAL COMPANY;
DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

     Respondents.

No. 20-9652
(Benefits No. 16-0108-BLA)
(Benefits Review Board)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BACHARACH**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

This appeal involves a claim under the Black Lung Benefits Act. *See*

30 U.S.C. §§ 901–945. This Act requires operators of coal mines to

compensate miners who get chronic pulmonary or respiratory ailments

---

[*]    Oral argument would not help us decide the appeal, so we have decided the appeal based on the record and the parties' briefs. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).

    Our order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

from exposure to coal dust. 30 U.S.C. § 921(a)–(b). The claimant, Mr. Ronald Jackson, applied for compensation and the agency denied the application. We vacate the decision and remand for further proceedings.

## I. The agency denies compensation based on a failure to link Mr. Jackson's pulmonary disease to coal dust.

For roughly 11 years, Mr. Jackson worked in a coal mine operated by the Black Butte Coal Company. After terminating his employment with Black Butte, Mr. Jackson spent roughly 21 years working in an underground trona mine.[1] After retiring from this job, Mr. Jackson was diagnosed with chronic obstructive pulmonary disease. If exposure to coal dust had contributed to this disease, Mr. Jackson would qualify for statutory benefits from Black Butte. 20 C.F.R. § 718.201(b). But Black Butte denied a causal link between Mr. Jackson's exposure to coal dust and his respiratory disease.

Four physicians submitted medical opinions. Three linked the respiratory disease to coal dust; a fourth physician denied such a link. The administrative law judge and Benefits Review Board ultimately credited the fourth physician's opinion, agreeing that Mr. Jackson hadn't shown a link between his exposure to coal dust and his respiratory disease.

---

[1]     Trona is a sodium carbonate compound that is processed into soda ash or baking soda. *Barlow & Haun, Inc. v. United States*, 805 F.3d 1049, 1052 n.1 (Fed. Cir. 2015).

2

**II.    The administrative law judge failed to provide a reasonable explanation for crediting Dr. Fino's opinion and declining to give any weight to Dr. Gottshall's opinion based on her purported equivocation.**

"In cases involving conflicting medical . . . evidence, an administrative law judge must 'articulate a reason and provide support' to favor one opinion over another." *Energy West Mining Co. v. Estate of Blackburn*, 857 F.3d 817, 823 (10th Cir. 2017) (quoting *Gunderson v. U.S. Dep't of Labor*, 601 F.3d 1013, 1021 (10th Cir. 2010)). In our view, the administrative law judge failed to provide an internally consistent explanation for the decision.

The judge discounted the three medical opinions linking Mr. Jackson's respiratory disease to coal dust. One of these medical opinions was Dr. Brigitte Gottschall's. In a form, Dr. Gottschall was asked to identify every cause of Mr. Jackson's pulmonary condition. She answered: "Mr. Jackson's [chronic obstructive pulmonary disease] is substantially contributed to by both coal mine dust exposure and smoking." Appellant's App'x at 4.

The administrative law judge discounted this opinion, reasoning that Dr. Gottschall had equivocated in a letter accompanying her form. There, Dr. Gottschall twice described the link as "likely":

1.    "It is likely that his occupational coal mine dust exposure is a substantially contributing factor to his [chronic obstructive pulmonary disorder]."

3

2.    "It is likely that his previous smoking history in combination with his occupational coal mine dust exposure . . . are both causally important in his obstructive lung disease."

*Id.* at 11.

The parties disagree on the validity of this reasoning. To Mr. Jackson, the qualifier (*likely*) is prudent; to the employer, it's equivocation. Support exists for either characterization. For example, we and other courts have upheld characterization of similar qualifiers as equivocation in black-lung cases. *See Garcia v. Dir., OWCP*, 869 F.2d 1413, 1416–17 (10th Cir. 1989) (characterizing the qualifier *probably* as equivocation); *Risher v. OWCP*, 940 F.2d 327, 331 (8th Cir. 1991) (treating the qualifier *probably* as equivocation); *Brandywine Explosives & Supply v. Dir., OWCP*, 790 F.3d 657, 666 (6th Cir. 2015) (characterizing the qualifiers *likely*, *at least*, and *could have* as equivocation); *Richards v. Dir., OWCP*, 160 F. App'x 203, 208 (3d Cir. 2005) (unpublished) (characterizing the qualifier *probably* as equivocation). On the other hand, the Fourth Circuit characterized a similar qualification as candor rather than equivocation. *Perry v. Mynu Coals, Inc.*, 469 F.3d 360, 365–66 (4th Cir. 2006); *see also Amax Coal Co. v. Beasley*, 957 F.2d 324, 328 (7th Cir. 1992) (stating that "utter certainty" isn't required in medical opinions and the court doesn't "expect dogmatic diagnoses from a careful scientist").[2] In

---

[2]    We've similarly observed that the Black Lung Act's remedial purposes "cannot be achieved if claimants are held to a standard of proof

addressing Dr. Gottschall's opinion, the agency appeared to side with those courts that treat qualifiers as equivocation.

But the administrative law judge took a different approach when assessing the opinion of Dr. Gregory Fino. Dr. Fino opined that coal dust hadn't "played any role" in Mr. Jackson's respiratory disease. Appellant's App'x at 232. In reaching this opinion, Dr. Fino considered Mr. Jackson's work in a trona mine after years of working in a coal mine.

Dr. Fino assumed that Mr. Jackson's respiratory disease had come from dust either in a trona mine or coal mine. In deciding between the two possibilities, Dr. Fino focused on Mr. Jackson's partial pressure of oxygen, which had been measured in 2015 and 2016 and had dipped significantly when Mr. Jackson exerted himself. Dr. Fino found it "hard to believe that [Mr. Jackson] could do underground mining in the trona mines with [partial pressure of oxygen] values as low as were recorded." *Id.* at 231. A more plausible cause was the work in a trona mine. But Dr. Fino would opine only that (1) the work in trona mines "could account for" the respiratory disease and (2) he "[could] not be sure." *Id.* at 231–32.

Though Dr. Fino opined only on what was "hard to believe" and what "could account" for the disease, the administrative law judge credited Dr. Fino's opinion. While crediting Dr. Fino's opinion, the judge gave no

approaching medical certitude." *Mangus v. Dir., OWCP*, 882 F.2d 1527, 1531 (10th Cir. 1989) (internal quotation marks omitted).

weight to Dr. Gottschall's opinion. But if Dr. Gottschall's opinion had been equivocal, Dr. Fino's opinion had appeared even more equivocal. After all, Dr. Fino had expressed no certainty, or even likelihood, about the cause of Mr. Jackson's respiratory disease. As a result, the administrative law judge's reasoning appears inconsistent. We thus remand for the agency to explain why it regarded Dr. Fino's opinion as less equivocal than Dr. Gottschall's.[3]

III.    **On remand, some matters remain open and others need not be reconsidered.**

Mr. Jackson also presents other challenges to the administrative law judge's decision. We consider these challenges because they could reoccur on remand.

---

[3]    A third physician, Dr. David James, also considered whether Mr. Jackson's chronic obstructive pulmonary disorder had come from exposure to trona dust. Dr. James noted that exposure to trona dust had "the potential" to affect Mr. Jackson's lung function. Appellant's App'x at 152. But Dr. James concluded that exposure to trona dust hadn't "been shown to be [a causative factor] in the development of [chronic obstructive pulmonary disorder]." *Id.*

Mr. Jackson points out that the administrative law judge didn't discuss this part of Dr. James's opinion. But Mr. Jackson doesn't develop a separate argument based on this omission. We do not foreclose Mr. Jackson from pursuing this argument on remand.

A.    **The administrative law judge could reasonably credit Dr. Fino's opinion over conflicting medical opinions based on the physicians' understanding of Mr. Jackson's work history.**

One of these challenges involved Dr. Fino's assumptions as to Mr. Jackson's exposure to coal dust. Dr. Fino correctly understood that Mr. Jackson had worked in Black Butte's coal mines for roughly 11 years. But the nature of his job mattered because field workers could face greater exposure to coal dust than office workers. So the administrative law judge divided Mr. Jackson's job responsibilities, finding that he had worked about 60% of the time in a coal mine and about 40% in an office.

The administrative law judge concluded that Dr. Fino's breakdown of Mr. Jackson's job responsibilities was more accurate than Dr. James's or Dr. Sood's. Dr. Sood never mentioned any office work and mistakenly said that Mr. Jackson had worked in a coal mine as recently as 1991. (Mr. Jackson ended this job with roughly 2 and 1/2 months left in 1990.) Unlike Dr. Sood, Dr. James acknowledged some office work. But Dr. James didn't quantify Mr. Jackson's office work.

The administrative law judge found that Dr. Fino had a better understanding of the amount of time that Mr. Jackson had spent doing office work. Mr. Jackson doesn't question Dr. Fino's understanding, and the difference could justify greater weight to Dr. Fino's opinion than to the opinions by Dr. Sood or Dr. James.

But Mr. Jackson argues that Dr. Fino understated the level of dust exposure during the work in a coal mine. Mr. Jackson testified that even when working in the office, he'd experienced severe exposure to coal dust roughly 60% of the time. Dr. Fino didn't mention this testimony.

In our view, the administrative law judge could reasonably credit Dr. Fino's understanding of Mr. Jackson's exposure to coal dust over the respective understandings of Drs. James and Sood.[4] So on remand, we do not require reconsideration of this issue.[5]

### B.    The administrative law judge can reconsider Dr. Fino's reliance on Mr. Jackson's ability to work in a trona mine.

Dr. Fino relied not only on Mr. Jackson's office work but also on his work in a trona mine. Dr. Fino reasoned that Mr. Jackson couldn't have performed his work in a trona mine if exertion was draining his capacity for pressurized oxygen.

On appeal, Mr. Jackson questions this reasoning, pointing out that pneumoconiosis often doesn't manifest itself until miners free themselves of exposure to coal dust. Mr. Jackson points out that a federal regulation

---

[4]    Mr. Jackson also observes that his time in a coal mine approached the minimum number of years to trigger a rebuttable presumption of causation. *See* 30 U.S.C. § 921(c)(4). Despite this observation, he doesn't argue that the administrative law judge erred by failing to consider the number of years spent working in a coal mine.

[5]    But as noted above, we elsewhere require reconsideration of Dr. Fino's opinion in relation to Dr. Gottschall's.

8

treats pneumoconiosis as a "latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." 20 C.F.R. §718.201(c).[6] We consider this issue because it too could reoccur on remand.

Though the regulation indicates that pneumoconiosis could manifest itself after stopping the work in a coal mine, Dr. Fino opines that if Mr. Jackson had suffered from pneumoconiosis, he couldn't have worked for 21 years in a trona mine.[7] But this opinion assumes that Mr. Jackson's pressurized level when he was tested in 2015 and 2016 reflects his pressurized oxygen level when he worked in the trona and coal mines, and the administrative law judge didn't address this unstated assumption. On remand, the administrative law judge can revisit Dr. Fino's unstated

---

[6]    When the agency adopted the regulation, it considered Dr. Fino's medical publications, but rejected his opinion denying the latent, progressive nature of pneumoconiosis. Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79920, 79969–70 (Dec. 20, 2000).

[7]    The Sixth and Fourth Circuits rejected the agency's reliance on similar opinions by Dr. Fino, which had discounted a possible link between coal dust and respiratory impairments diagnosed 16–17 years after the claimants had stopped working in coal mines. *Lance Coal Corp./Golden Oak Mining Co. v. Caudill*, 636 F. App'x 355, 362 (6th Cir. 2016) (unpublished); *Sea "B" Mining Co. v. Dunford*, 188 F. App'x 191, 199 (4th Cir. 2006) (unpublished). Both courts relied on conflicts between Dr. Fino's opinions and the regulatory characterization of pneumoconiosis as a "latent and progressive disease which may first become debatable only after the cessation of coal dust exposure." *Caudill*, 636 F. App'x at 362 (quoting 20 C.F.R. § 718.201(c)); *Dunford*, 188 F. App'x at 199.

assumption that Mr. Jackson's pressurized oxygen level had remained relatively static during Mr. Jackson's work in the trona and coal mines.

## IV. Conclusion

The administrative law judge failed to reasonably explain why he completely discounted Dr. Gottschall's opinion as equivocal and credited Dr. Fino's opinion on causation even though it appeared at least equally equivocal. We vacate the agency's decision and remand for further proceedings.[8]

Entered for the Court


Robert E. Bacharach
Circuit Judge

---

[8] Mr. Jackson also argues that the agency failed to provide a reasoned decision. We need not address this argument.